## Dotson, et al. v. Fletcher, By et al.

(Decided October 19, 1916.)

### Appeal from Pike Circuit Court.

1. Evidence—Parol Evidence—Written Contracts.—Parol evidence is admitted to establish known usage respecting the subject to which a written contract relates, and to interpret the meaning of the language used where the meaning is equivocal and obscure.

2. Evidence—Statements by Grantor of Land.—Statements made by the grantor of the extent of his boundary of land before the execution of a deed to same are competent as against the grantee in an inquiry to explain the equivocal and obscure description of the land in the deed.

3. Evidence—Extraneous Evidence as to Meaning of Deed.—In a deed describing land only as part of the "home farm of Thomas Hatfield" upon a certain branch, extraneous evidence of the meaning intended by the parties was admissible, and upon such evidence held that the description applied only to the patented lands of Thomas Hatfield and did not include other adjoining lands claimed by him under adverse possession.

J. S. CLINE and AUXIER, HARMON & FRANCIS for appellants.

F. W. STOWERS, S. C. STOWERS and HORATIO S. HOWARD for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Thomas Hatfield, at his death in 1892, owned, under two patents from the Commonwealth, about one hundred and fifty acres of land on Peel Poplar Branch in Pike County, Kentucky, which we shall refer to hereinafter as his "patented lands." These patented lands did not extend to the top of the surrounding ridges, but some time before he died he marked out a line along the top of the ridges surrounding his patented lands and asserted title by adverse possession to the land surrounding and adjoining his patents to the marked line along the top of the ridges, which land will be referred to as his "back land."

He left a will by the seventh clause of which he devised to his daughter, Phoebe Hatfield, a portion of this land which is described in the will as follows:

"Commencing at the upper end of J. P. Hatfield's land on the Peel Poplar Branch running up the left-hand side of the said branch to a beech, thence running across

said branch to the top of the fork ridge to Phoebe Hatfield and her heirs.''

In 1896 Phoebe Hatfield, in consideration of $50.00, conveyed to Davis C. Mounts lands which in the deed are thus described:

"All of my interest of land in home-farm of Thomas Hatfield (deceased) being in Pike County, Kentucky, lying on Peel Poplar Branch of left-hand fork of Blackberry Creek."

In 1906 David C. Mounts, in consideration of $100.00, conveyed to Jordan Dotson the same land conveyed to him by Phoebe Hatfield by deed which thus describes the land conveyed:

"About twenty acres of land, more or less, situated in Pike County, Kentucky, on Peel Poplar Branch of the left fork of Blackberry Creek, and bounded on one side by the land of J. P. Hatfield, and on the opposite side by the land of Ferrell Coleman, so as to include the entire interest of David C. Mounts, lying between the lines above named, this being the same land conveyed to the said David C. Mounts by Phoebe Hatfield by deed dated January 16, 1896, and recorded in Deed Book No. 13 at page 378, records of Pike County, Kentucky."

Phoebe Hatfield after her father's death having married and died, intestate, left as her only heir Buddy Fletcher, an infant, who, suing by his next friend, brought this action against Jordan Dotson and Pond Creek Coal Company, claiming (1) that his mother, Phoebe Hatfield, took, in whatever lands her father devised to her, only a life estate with remainder to him as her only heir, and that she being dead, he was the owner and entitled to possession of the land conveyed by her to Mounts, and by him to Dotson; (2) that his mother, Phoebe Hatfield, at the time of the execution of the deed to Mounts was of unsound mind, and that for that reason the deeds to Mounts and to Dotson were void, and that as her heir he was the owner and entitled to possession of all of the land devised to her by her father, or otherwise owned by her at her death: (3) that the deed from his mother to Mounts and the deed from Mounts to Dotson conveyed only his mother's interest in the patented lands of his grandfather, Thomas Hatfield, and that said deeds did not convey her interest in her father's back land which was owned by his mother at her death and inherited by him as her only heir.

The defendant, Jordan Dotson, claimed by his answer that Phoebe Hatfield under the seventh clause of her father's will took all of the land between the lines of J. B. Hatfield and Ferrill Coleman to the outside boundary on the top of the ridges claimed by Thomas Hatfield, including portions of the land claimed by him covered by patent as well as back land; that by her deed to David C. Mounts, Phoebe Hatfield conveyed to him her entire interest in that entire boundary, and that under his deed from Mounts he acquired all of same, and denied that Phoebe Hatfield took only a life estate in the lands devised to her or that she was of unsound mind at the time she made the deed to Mounts.

Jordan Dotson died while the action was pending in the circuit court and it was revived in the name of his heirs.

The defendant Pond Creek Coal Company by separate answer alleged that it had purchased of Jordan Dotson through Donald Clark, trustee, for $25.00 an acre, the minerals under the entire 80.23 acres claimed by him, but deed had not been made therefor; that it had paid only $525.00 of the purchase price, the balance of which was not payable until deed was made to it, and set up the same defenses as relied upon by Dotson.

By survey made subsequent to the deed to Dotson, it was ascertained that in the boundary between the lines devised to J. B. Hatfield and Ferrill Coleman and top of the ridges, there were 80.23 acres of land, of which 25.60 acres was patented land owned by Thomas Hatfield and 54.63 acres was back land claimed by Thomas Hatfield at his death.

The will of Thomas Hatfield makes no mention of "home farm," "patented lands" or "back lands" and it is immaterial to the decision of this case whether under the seventh clause of this will Phoebe Hatfield acquired title to the whole of this 80.23 acres, or whether under that will she acquired title only to the 25.60 acres of same covered by patents of Thomas Hatfield, and acquired title to the back lands by the adverse possession of her father for the time he was in possession and claiming same, tacked to her own possession thereof after his death, or otherwise, as it is agreed by all parties, she owned the entire 80.23 acres when she made the deed to Mounts; but it is necessary to determine whether by her deed to Mounts she conveyed only the 25.60 acres,

which was a part of Thomas Hatfield's patented land, or whether by that deed she conveyed the entire 80.23 acres of land.

The lower court decided the first two contentions of appellee, viz.: that his mother only had a life estate in the lands devised to her, and that she was of unsound mind when she conveyed to Mounts, adversely to him, and, as he has not prosecuted a cross-appeal, there is before us only the single question of what land Phoebe Hatfield conveyed to David C. Mounts.

It will be noticed that her description of the land, in which she conveyed her entire interest, is contained in the words "in home farm of Thomas Hatfield," and whether "home farm" means simply the patented lands of Thomas Hatfield, or both patented and back lands is the disputed question here.   To explain what this expression meant, the trial court permitted the parties to introduce extraneous evidence, and appellant contends that the admission of this evidence was erroneous, but if this is not a case where such evidence is permissible, we do not see how it would be possible to construe the meaning of this deed.   One party contends that "home farm" means the patented land owned to the exclusion of the back land, while the other party contends that it includes both the patented and back lands.   Parol evidence is always admissible to establish known and established usage respecting the subject to which a written contract relates, and to interpret the meaning of the language used or to ascertain the nature and extent of the contract in the absence of express stipulations or where the meaning is equivocal and obscure.   1 Greenleaf on Evidence, Sec. 275 to 292; Slusher, et al., v. Slusher, 102 S. W. 1188.   The meaning of the language used in this deed being equivocal and obscure and dependent upon local usage, parol evidence was competent to make this usage clear.   While the evidence is conflicting as to whether or not the "home farm" had a recognized meaning in the Hatfield family or that neighborhood applicable to one contention more than the other, it is shown in the evidence that David C. Mounts during the ten years he owned the land conveyed to him by Phoebe Hatfield never, at any time, claimed, under the deed from her, anything but the patented land; that he told two tenants to whom he rented the land and others that he only owned 16 or 20 acres, and that he did not own any

of the back land; that he gave permission for the hauling of timber cut off of the Phoebe Hatfield back lands out over the 16 or 20 acres that he claimed; that in conveying the land to Dotson he described it as the same land conveyed to him by Phoebe Hatfield, containing "twenty acres more or less."

While a statement of the number of acres contained in a boundary has uniformily been held in this state to be merely descriptive and must give way to metes and bounds and other definite descriptions unless a manifest intention is disclosed by the deed that only the quantity of land named is conveyed, still in this deed, which described the land only as the same land conveyed to Mounts by Phoebe Hatfield, restricting the recital of the number of acres as merely descriptive, it is a circumstance tending to show what was understood by Mounts and Dotson at the time by a description not at all definite as to whether it covered 25.60 acres or 80.23 acres.

The proof shows further that in 1896 when the land was conveyed by Phoebe Hatfield to David C. Mounts for $50.00 it was worth, if it included the entire 80.23 acres, from $150.00 to $200.00; that it was worth still more in 1906 when Mounts conveyed it to Dotson for $100.00.

In view of these facts the chancellor held that the construction placed upon the conveyance to Mounts by the parties during the time that he owned it and before he sold it, in connection with the value of the land at that time and when Phoebe Hatfield conveyed, and the considerations for these deeds, was convincing that the land conveyed and described as part of the home farm of Thomas Hatfield meant only the patented portion of his land owned by Phoebe Hatfield, and not the entire 80.23 acres, and in this we think he was correct. Unless the term "home farm" as employed in the deed had this meaning, it was without meaning at all, because if the deed had described the land as her "entire interest in the lands of Thomas Hatfield," it would have described her whole interest, and it is reasonable to suppose by inserting the words "home farm," the parties meant and understood some particular part of the land owned by Phoebe Hatfield, and she owned no other land than the 80.23 acre tract.

Appellant urges that evidence of statements made by Mounts to the title claimed by Dotson under deed

from him is incompetent, but some of the statements in the proof were made by Mounts while he owned the land and before he conveyed it to Dotson, and such statements were competent, as the rule applies only to disparaging statements made after the conveyance. Disregarding the statements made after the sale, those made before show that Mounts did not claim, but disclaimed, title to any but the patented lands. As no ruling was asked of or made by the chancellor upon this question we presume he considered only the competent statements, as we have done.

We do not attach the same importance, as does counsel for appellant, to the fact that the house in which Thomas Hatfield lived and died was on the line between the patented lands and the back lands, partly on each, as it was built there by his brother, before Thomas Hatfield acquired or claimed any of the land, under an evident mistaken belief that it was within the patent as the brother did not claim the back land, and Thomas Hatfield did not know it was so located until some time after he acquired the patented land. Under these circumstances and the proof in the case this fact is not in our opinion sufficient to control the meaning of the term "home farm" as used by the parties to the deed from Phoebe Hatfield to David C. Mounts, but is overbalanced by the construction placed upon the deed by them.

As the Pond Creek Coal Company had not paid Dotson as much of the purchase price as was due for the mineral in the land it gets under the judgment, viz.: the 25.60 acres, its rights were fully protected.

For the reasons indicated the judgment is affirmed.